## Miller *versus* Hale.

A county treasurer has no authority or jurisdiction to sell unseated land for non-payment of taxes, until the taxes for which it is sold shall have been "due and unpaid for one year before" the sale: and no tax is *due* until it is assessed.

Where the county commissioners, two or three months before the sale, charged upon unseated land, the taxes for several years preceding, there having been no prior assessment upon the same, such sale is void, and does not come within the curative provisions of the Act of 1815.

The Act of Assembly, which makes certified copies of the assessments in the commissioners' office evidence, does not exclude the originals when properly authenticated.

Such public books and records cannot be produced and authenticated by a person having no official custody of them; but it is competent for the parties to admit their authenticity, which supersedes the necessity of the proof.

The land, by whatever name assessed and sold, was debtor for the taxes imposed; and a sale in satisfaction of the assessment conveys a good title to the purchaser.

The name of the warrantee and township are circumstances of description, but not conclusive; and if these do not accord with the actual facts, the identity of the land may be established by any other competent evidence which will be satisfactory to the jury.

That the judge who tried the cause expressed himself satisfied with the evidence of the identity of the land, is not error.

Error to the Common Pleas of *Juniata county*.

This was an action of ejectment brought by Reuben C. Hale, Esq., against William Miller, to recover a tract of land containing 403 acres and 27 perches, surveyed on the 3d June, 1794, on a warrant to Philip Darr, dated 10th August, 1794.

The plaintiff claimed under a treasurer's sale to himself, made on the 11th June, 1838, for taxes assessed upon the land before Juniata was set off from Mifflin county.

The defendant claimed under a treasurer's sale in Juniata county, made on the same day to Charles Singmaster for taxes assessed in Juniata county.

On the trial in the court below, the plaintiff offered the assessment-book from Mifflin county, which was admitted to be a book from the commissioners' office of that county. It was objected, that the book is not evidence, it must be a certified copy; and that it did not show any assessment by the commissioners of that county. The objections were overruled, and the evidence admitted. The assessment was of 403 acres and 137 perches of land in "Fermanagh township" in the name of Philip Darr.

The plaintiff also offered the treasurer's deed to himself, dated the 11th June, 1838, for 403 acres and 137 perches in Derry township, surveyed (as stated by the court in the bill of exceptions) in the name of William Darr.

[Miller *v.* Hale.]

To this it was objected, that it was not for the same land, and not in same township.

The court overruled the objection, and admitted the deed in evidence.

The plaintiff also proved, that there was no tract of land in the township of "Derry," in the name of Philip Darr, but that the land lay in Fermanagh.

The defendant then offered the assessment of unseated land in Juniata county, in which Philip Darr's 403 acres and 107 perches in Fermanagh township, was assessed with a tax of $2.13.

The clerk of the commissioners was examined, and proved that prior to the sale in 1838, the deputy surveyor of the county made a return to the commissioners of the unseated lands within the county, and that two or three months before the sale, the taxes were charged by the commissioners, and aggregated, including the taxes from 1831 to 1837, and this list was given to the printers. And that no previous assessments had been made.

The assessment, sale, and deed were objected to by plaintiff, because the taxes were not assessed one year previous to the sale.

They were admitted, and the question arising reserved by the court.

The court below (GRAHAM, P. J.) charged the jury as follows:—

"The plaintiff claims title to the land in dispute by virtue of a sale by the treasurer of Mifflin county, for taxes due and unpaid from 1822 up to 1830. An assessment of taxes is shown for the years 1822, 3, 4, and 5, and a deed by the treasurer to the plaintiff, dated 12th June, 1838, reciting a sale made to him on the 2d Monday of June, 1838.

"The plaintiff has shown a warrant to Philip Darr, and survey thereon of 403 acres in Fermanagh township, Mifflin county, in 1793 and 4, and the assessment corresponds with the name of the warrantee and survey on his warrant. But the treasurer's deed recites the land as being in Derry township, and this the defendant alleges is a fatal defect in plaintiff's title and will defeat his recovery. We don't think so, if you are satisfied it is the same land, and that there is no land in Derry township warranteed in the name of Philip Darr. The evidence of Major Hough as to the identity of the land appears to us satisfactory. He has been deputy surveyor of Mifflin county for a number of years, and says there is not a tract of 400 acres of unseated land in Derry township, that he has not run the lines of, in whole or part, and that he never heard of a tract in that township warranted in the name of Philip Darr, but there is a tract corresponding with the assessment in Fermanagh township, formerly in Mifflin county and now in Juniata county.

"Should you be satisfied of the identity of the land, the plain-
VOL. II.—28

[Miller *v.* Hale.]

tiff's title is an available one unless the defendant has shown a better one.

" The defendant claims title to the land in dispute by virtue of a treasurer's sale of the same land in Juniata county on the same day, and a treasurer's deed in pursuance of said sale for taxes assessed from 1832 to 1837. Juniata, formerly a part of Mifflin county, was organized as a county in 1831. An assessment book of the unseated lands in the county has been given in evidence showing an assessment of taxes on this land from 1832 to 1837, and Mr. Christy, who was then, and has been clerk and counsel to the county commissioners for a number of years, proves that this book is the only assessment of unseated lands in the county. He says that the mode in which the assessments were made was this. Previous to the sale the county surveyor returned to the commissioners a list of unseated land in the county, and two or three months before the sale in June, 1838, which was the first sale in the county, the list was copied into this book, the land valued at 25 cents per acre, and the mill rate estimated on the valuation. That the taxes for the number of years unpaid were aggregated and charged in one sum, and no separate tax for each year charged. The plaintiff contends that this mode of assessment cannot authorize a sale by the treasurer within two or three months after the assessment was made—and that no assessment having been made one year previous to the sale, the title of defendant is invalid and cannot defeat plaintiff's recovery.

" The Act of Assembly requires that the taxes shall be due and unpaid for one year previous to the sale. It evidently intends that the owner shall have one year to pay his taxes before he can be subjected to the expense of redeeming his land after a tax sale. He must be in default for one year. But how can he be in default in the payment of a tax which has not been assessed, and the amount of which is nowhere to be ascertained? The owner of the land might search in vain for the amount of the tax, and it would be impracticable to pay a tax which never had been assessed, and the amount of which it would be impossible for the commissioners to ascertain, from any papers in their office. The land must be returned and a value put upon it before the tax can be ascertained. If there was any evidence to show that the land had been returned and a value put upon it, one year prior to the sale, from which the tax could be ascertained by calculation by reference to the mill rate for state and county purposes on unseated lands, during the years for which the taxes had been paid on the unseated lands, we would sustain the assessment and sale. But it cannot be said that a tax was due and unpaid for one year, where there was no data from which the amount to be paid could be ascertained until within three months of the sale. The defendant's title having failed by reason of there being no

[Miller v. Hale.]

such assessment as would authorize a sale at the time it was made by the treasurer of Juniata county, you will find for the plaintiff if you are satisfied the land he now claims is the same conveyed to him by the treasurer of Mifflin county, and now in the possession of the defendant.

"This view of the case renders it unnecessary to decide the other points which would arise if the sale by the treasurer of Juniata county was a valid one. If it was, the sale on the judgments entered on the surplus bond given by Singmaster, the purchaser, at the treasurer's sale in Juniata county, would not divest the defendant's title, for Singmaster had sold to Miller, the defendant, prior to the sheriff's sale to plaintiff, and the lien of this bond upon the land had expired before the sheriff's sale to General Hale."

The jury found for the plaintiff.

The errors assigned were to the admission of the assessment book from Mifflin county; the treasurer's deed to plaintiff, and the opinion of the court as to the evidence of identity of the tract; and the instruction that the sale in Juniata was void, by reason of the taxes not having been assessed and due one year before the sale.

*Alricks* and *Reed*, for plaintiff in error.

*Parker* and *Casey*, contrà.

The opinion of the court was delivered by

WOODWARD, J.—Two tax sales were made of the land in controversy on the same day, one by the treasurer of Mifflin county, the other by the treasurer of Juniata county; and the general question on the trial was, which of them conferred the best title. The plaintiff claims under the Mifflin county sale, the defendant under that in Juniata. The opinion of the court below was with the plaintiff, and to their ruling several errors are assigned, which I proceed to notice in the order in which they stand upon the record.

1. There was no error in admitting the book of assessments, admitted "to be a book from the commissioners' office, in Mifflin county." The Act of Assembly, making certified extracts from such books competent evidence, does not exclude the originals when properly authenticated, and though they cannot be produced and authenticated by persons having no official custody of them (9 *Watts* 311, and 1 *W. & Ser.* 282), it is quite competent for the parties to admit their authenticity. The defendant did so in this instance, and thus he made the book evidence for whatever its contents proved, touching the land in question. The book showed an

[Miller *v.* Hale.]

assessment of taxes for the years 1823, '24, and '25, upon the unseated tract of land surveyed in the name of Philip Darr,— 403 acres 137 perches, valued at $403.

2. The second error relates to the treasurer's deed to the plaintiff. In the bill of exceptions it is described as a deed Charles Ritz to R. C. Hale, dated 12th June, 1838, for 403 acres 137 perches of land in Derry township, Mifflin county, for the year 1822 and up to 1836, inclusive. Sold for $5.20; consideration paid $9.05, being amount of taxes and costs. Surveyed in name of William Darr. Taxes $2.20." This deed was objected to on the ground that it was not for the land assessed and sold—that the assessment was for Fermanagh township—the deed is for land in Derry. The plaintiff thereupon proved that the land is in Fermanagh township, Juniata county, and that there is no such tract in Derry township, Mifflin county; and then the court admitted the deed in evidence.

The deed is not furnished us by either party, but in the counter statement of the plaintiff it is asserted to be in the name of Philip Darr, and that the name of William Darr came into the bill of exceptions by "an inadvertence in taking a memorandum of the deed by the court." This statement though not contradicted, cannot be received to countervail the bill sealed by the court. The object of a bill of exceptions is to place facts that transpire in the court below upon the record, that they may be reviewed. Where a document is briefly described in a bill, and not furnished *in extenso*, we are to take it as described. The bill is the highest evidence before us of what the document was.

The question, then, upon this deed was, whether it described the land assessed, and that was properly submitted to the jury as a question of fact. That land, by whatever name it was sold, was the debtor for the taxes imposed, and if it was sold and conveyed to the plaintiff in satisfaction of the assessment, he acquired a good title. The name of the warrantee and of the township are circumstances of designation, but not conclusive. The identity of the tract assessed must be fixed to the satisfaction of the jury,— if by the warrantee and the township, very well—if by other circumstances of designation, equally well: 1 *W. & Ser.* 166; 4 *Harris* 404. The evidence here tended to identify the tract conveyed with that assessed and sold; and having proved satisfactory to the jury, it must be so to us.

3. It is next complained of that the court expressed their satisfaction with the testimony of Major Hough, as to the identity of the land. It has never been accounted error for a judge, in fairly submitting a question of fact, to intimate his opinion upon the weight of evidence. Unskilled as most jurors are in appreciating legal proofs, they are greatly aided, and rash and unreasonable verdicts prevented, by the judge directing their attention to such

[Miller v. Hale.]

views of the evidence as seem reasonable to his more practised eye.    The administration of justice is rendered more certain and exact thereby ; the necessity for new trials is obviated, and protracted litigation prevented.

These errors being overruled, the plaintiffs' title is established to be valid, for it is not objected that land lying in Juniata county could not be sold in Mifflin county for taxes duly assessed before the division of the county ; but it is insisted that on the same day the plaintiff bought of the treasurer of Mifflin county, the treasurer of Juniata sold the same tract to Charles Singmaster, under whom the defendant claims, for taxes assessed in the latter county, and thus that he acquired a better title than the plaintiffs.    The fourth and only remaining error assigned relates to the opinion of the court upon the effect of the sale in Juniata county.    This county was erected in 1831, and the first sale of unseated lands for taxes, including Philip Darr's, took place in June, 1838.    It appeared in evidence that previous to the sale the county surveyor returned to the commissioners a list of unseated lands in the county, and two or three months before the sale in June, 1838, the list was copied into a book, the land valued at 25 cents per acre, and the mill rate estimated on the valuation—that the taxes for the number of years unpaid were aggregated and charged in one sum, and no separate tax for each year charged.

If it be granted that this was a regular assessment, or that its irregularities were such as the curative provisions of the Act of 1815 would remedy, it cannot be claimed that the taxes were " due and unpaid for the space of one year before" the sale—a condition on which the jurisdiction of the treasurer is expressly limited by the first section of the Act of 1815.    It was said with great truth by Judge HUSTON, in McCall v. Lorimer, 4 Watts 352, that taxes cannot be due unless they have been assessed.    It is indeed the assessment that makes the tax.    It is the duty of all owners of unseated lands to return them for taxation, and to pay the taxes when assessed ; but how is he to pay before they are assessed ?    It is not for him to fix the valuation or the rate, but for the county commissioners ; and until they have performed their duty, he has no duty to perform.    But when the assessment has been made and the tax ascertained, there is no authority for proceeding to sell the land until the tax shall have remained unpaid a year.    A sale short of that period is simply void.    It is like a sale where there has been no assessment, which has often been declared insufficient to pass the title.    Nor does the curative provision of the fourth section of the Act of 1815 apply to such a sale, for that was intended to remedy irregularities in proceedings where jurisdiction had attached, not to confer jurisdiction in cases that were beyond the purview of the act.    A system was provided by the legislature for enforcing the payment of taxes upon unseated lands, but until

[*Miller v. Hale.*]

a tract has been assessed and the tax remained due and unpaid a year, it is not within the system nor subject to any of its provisions. If such were not the rule of decision, titles could be divested, without notice to the owner, whenever it suited the interests or caprice of the county officers to expose them to sale. A law intended to promote public objects without a wanton sacrifice of private rights, would thus become an instrument of intolerable mischief, and the doubts of its constitutionality, which, with all its checks and balances, attended its enactment and early history, would grow into a conviction that would sweep it from the statute book. We think the views of the learned judge on this point were sound, and in accordance with the spirit of all the authorities.

It follows that the title claimed by the defendant cannot prevail against that set up by the plaintiff. If the defendant's title had not been subject to this radical defect, it would have been a curious question which of two titles, regular and valid on their face, and originating the same day, should take the land, but under the circumstances of the case we are spared the necessity of considering that question.

The judgment is affirmed.