# James M. Everhart *v.* George F. Nesbitt and G. Mortimer Lewis, Appellants.

*Tax sale—Assessment—Acreage—Evidence—Question for jury.*

In an ejectment to try title to land under a tax sale where it is contended that the land in dispute was part of a larger tract in the seated list upon which the taxes had been paid, evidence of the quantity of land in the tract in dispute, and of the quantity of the larger tract, as well as evidence that the land in dispute had been separately assessed in the unseated list, and that taxes thereon had been paid without question, is for the jury in determining whether the smaller tract was included in the assessment of the larger tract.

*Tax sale—Mistake of description in treasurer's deed—Evidence—Question for jury.*

In an action of ejectment to try title to land acquired at a tax sale where the evidence clearly and undisputedly identifies the land described in the treasurer's deed as the land assessed and sold and in dispute, a mistake in the treasurer's deed will not render the deed inoperative, but the question of the identity of the tract assessed is for the jury under all the evidence.

*Tax sale—Separate assessment—Sheriff's sale—Innocent purchaser without notice.*

In an action of ejectment to try title to land which was formerly a part of the larger tract, the plaintiff claimed under a tax sale on a separate assessment of the land. The defendants claimed under a subsequent sheriff's sale. In the various deeds in the line of title to the defendants, including the sheriff's deed, the treasurer's sale was recited, and at the sheriff's sale public notice of plaintiff's title was duly given. *Held*, that defendants could not be heard to say that they were purchasers without notice of the separate assessment and sale of the land in controversy.

Argued Feb 25, 1897.  Appeal, No. 532, Jan. T., 1896, by defendants, from judgment of C. P. Lackawanna Co., Nov. T., 1892, No. 363, on verdict for plaintiff.  Before WILLIAMS, MC-COLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Ejectment for a tract of land consisting of thirty-seven acres, in Ransom township.  Before GUNSTER, J.

At the trial plaintiff claimed title under a deed from the treasurer of Lackawanna county, acknowledged on October 16, 1884.  The deed was executed in pursuance of a sale for taxes levied, in 1882, upon the land as unseated.  The defendants claimed that the land was included in a larger assessment as seated land, and that the taxes on the larger assessment had been paid.

Other facts appear by the opinion of the Supreme Court, and by the extracts from the opinion of ARCHBALD, P. J.

Plaintiff offered in evidence assessment, 1874 : Ransom township, Daniel Turner, number of acres, 36 ; value per acre, $3.00 ; total value, $108 ; aggregate value, taxable for county purposes, $108 ; valuation as adjusted by commissioners, $135 ; to be followed by showing that this Turner warrant, 36 acres, was assessed from 1874 up to 1882, and then a sale took place in 1884 for the taxes of 1882 or 1883, continuously assessed in the name of the Daniel Turner warrant, and of Paul Aten, owner, from 1874 up to 1882.  This is for the purpose of showing that the Turner was assessed separate from the Hunter, and that it was not incorporated in that.  This would show a line of assessments of the Turner tract as we purchased it in 1884 at treasurer's sale, consistent with the separate assessment of the Turner tract, independent of any other land.

He further offered to follow this by proof that from 1874 to 1884, the date when the treasurer made a deed to the plaintiff, to be subsequently given in evidence, the land in question was assessed regularly as unseated land upon the books of the commissioners as a separate tract, and in 1877, 1878, 1879, and down to 1884, the name of Paul Aten, owner, was also added, for the purpose of showing that this tract of land was assessed separately from any other tract of land, and for the purpose of identifying the same land which was in 1884 sold by the treasurer for unpaid taxes to James M. Everhart, the plaintiff.

Defendants objected to the offer for the reason that the tax sale under which plaintiff claims here was not upon this assessment at all; and he does not offer to follow it by showing that there was any sale upon this assessment, and therefore it is immaterial and irrelevant.

The evidence was admitted, exception noted and bill sealed for defendants. [2]

Plaintiff offered in evidence deed from George Kinback, treasurer of Lackawanna county, to James Everhart, dated June 9, 1884, duly acknowledged on October 16, 1884, in open court, certified under the seal of Henry Summers, prothonotary; and to show that the deed offered in evidence was the deed made by the treasurer in pursuance of the sale of the land assessed in the name of Paul Aten, owner, to James M. Everhart, in Ransom township, and the only deed that was made to him in the year 1884; and, in connection with the offer to prove by J. H. Gunster, the deputy treasurer at the time, that he conducted the sale for taxes for George Kinback, treasurer; that James M. Everhart bid off at such sale the land sold as Daniel Turner tract, Ransom township, 36 acres, Paul Aten, owner, and that he made out the deed offered in evidence to James M. Everhart, for such purchase, and that the same was executed and acknowledged by George Kinback, treasurer, and delivered to said Everhart; that on July 9, 1892, the defendants filed and presented their petition, already in evidence, to the court of common pleas of Lackawanna county, setting forth (inter alia) that they are in possession and claim title to a certain tract of land situated in said county, described as follows: A tract of unseated land containing 36 acres, situated in Ransom township, Lackawanna county, sold as the property of Paul Aten; second, that on October 16, 1884, George Kinback, treasurer of the county of Lackawanna, acknowledged a deed to James M. Everhart, the said tract of land being sold by the treasurer for unpaid taxes; and to prove that, on August 22, 1892, the said defendants did obtain leave of this court to amend the description of said land, which is in evidence, wherein they say, "Which said description above mentioned your petitioners aver and believe is a correct description of the land intended to be described in the deed of George Kinback, treasurer, to James Everhart, dated October 16, 1884, and fully

set forth in the petition ; " and that said defendants agreed by their agreement, also in evidence, that the description in the precipe and writ in the present case be further amended so as to read, inter alia : " And being all that portion of a tract of land in the warrantee name of Daniel Turner, not covered by the said Andrew Henderson and Joseph Hunter warrantee tracts."

This is offered for the purpose of showing title in James M. Everhart to the Daniel Turner tract, thirty-six acres, Paul Aten owner, in Ransom township, the assessment of which has been given in evidence, and for the purpose of identifying the land described in the deed as the same land described in the writ as amended. This offer to be followed by evidence that Paul Aten was known and reputed to be the owner of the thirty-six acres of land in dispute, and that no other land was assessed in Ransom township in the years 1882 and 1883 in the name of Paul Aten in the unseated list; and that no other land was sold on June 9, 1884, to James M. Everhart, as unseated, at the treasurer's sale.

Defendants objected to the offer as immaterial, irrelevant and incompetent, for the reason that parol evidence or other evidence cannot be received to supplement a treasurer's deed, nor can the terms of the treasurer's deed be changed by agreement, or in any other way ; the matters set up in the offer do not amount to an admission, and if the plaintiff recovers in this action he must do it for the tract of land described in the treasurer's deed, which is not the same as the tract of land described in the writ in this case.

Objections were overruled, evidence admitted, exception and bill sealed for defendants. [5]

The treasurer's deed is as follows :

" To all persons to whom these presents shall come : I, George Kinback, treasurer of the County of Lackawanna, in the Commonwealth of Pennsylvania, send greeting. Whereas, a tract of unseated land containing 36 acres, situate in the Township of Ransom, County of Lackawanna, surveyed to Paul Aten, hath been rated and assessed with divers taxes, to wit: County tax, $4.32 ; school tax, $5.40 ; building tax, road tax, $3.78 ; borough tax, special borough tax, poor tax, 54 cents ; total, 14 and 04-100

dollars, which remained due and unpaid for the space of one year before the second Monday of June, 1884. And whereas, I, the said treasurer, in pursuance of the acts of assembly of the Commonwealth of Pennsylvania, in such case made and provided, after having given due public and timely notice of the time and place of sale, did on the day and year aforesaid, expose the aforesaid tract of land to sale by public vendue and outcry, I, George Kinback, treasurer, did on the ninth day of June, 1884, sell the same to James Everhart, for the sum of $69.04, he being the highest and best bidder, and that the best price bidden for the same, being a sum sufficient to pay the aforesaid taxes and all costs necessarily accrued, and a surplus of fifty dollars for which the said James Everhart has given a bond as required by law, and which is herewith presented to the Court of Common pleas of said County. Now, know ye, that I, the said treasurer, for and in consideration of $69.04, lawful money of the United States, to me in hand paid by the said James Everhart, which before the ensealing of these presents, is hereby acknowledged to be received, have granted, bargained and sold, and by these presents do by force of the Act of Assembly in such case made and provided, grant, bargain and sell unto the same James Everhart, his heirs and assigns, the aforesaid tract of unseated land, . . . . subject to the redemption allowed by law.

" In witness whereof, I, the said treasurer, have hereunto set my hand and seal at Scranton, the ninth day of June, in the year of our Lord one thousand eight hundred and eighty-four.

"GEORGE KINBACK,      (Seal.)

" Treasurer of Lackawanna County."

Plaintiff's points and answers thereto among others were as follows :

6. That in determining whether there was a double assessment in this case, the jury should also take into consideration the acts of the person claiming to own the tracts at that time, in paying the taxes assessed against the two parcels from time to time, and not having the same exonerated, and having the land bid off at treasurer's sale upon a separate assessment and sale of the same as unseated. *Answer:* I affirm that proposition. At the same time it must be borne in mind that a subse-

quent payment of a tax, that is, the payment of a tax after the assessment has been completed, or the bidding in at a sale subsequent to the assessment may be from a desire to avoid litigation. It is sometimes cheaper for a man to pay a trifling tax than it is to run the risk of a lawsuit, or in order to have no more bother about it. It is also to be borne in mind that a taxpayer sometimes does not know that he has been assessed twice for the same land—he may not know it—he has no way of knowing it until the assessment has been made. If he is notified beforehand with what he has been assessed, then he could tell whether he was going to be assessed twice for the same land or not. After the assessor has made his return, he has had his notice, gone to the commissioners, and finds his name only on the seated list in one place, and if he should find himself there taxed with all the land which he claims to own, he might not look on the unseated list to see whether part of the land included in that general acreage also included the land that was assessed on the unseated list. [14]

7. If a double assessment of a tract of unseated land be claimed, one assessment being by acres as seated land, and the other by warrantee name as unseated, the latter assessment is presumptively the correct one, and it should require a clear preponderance of the weight of evidence to overthrow such presumption. *Answer:* I affirm that proposition. [15]

8. The mere fact that a person is assessed with more seated land than he has, in the seated list at $2.40 an acre, is not evidence that an unseated tract valued at $15.00 an acre, which is also assessed at the same time, is included in such seated assessment. *Answer:* I affirm that proposition. [16]

14. If the jury believe that the same owner has paid taxes assessed for many years upon the Daniel Turner tract as unseated, and as a separate and distinct tract, containing thirty-six acres, and upon another separate tract in the seated list as containing four hundred and eight acres without correction of any continued error in the assessment as to the number of acres, and if he has recognized and treated them as distinct and separate tracts, he cannot now claim that his payment of taxes for 1882 upon the four hundred and eight acres, as seated, covered also the taxes for the thirty-six acres unseated, which he neglected to pay, although for that year he paid taxes for more acres than

he possessed in the seated list. The number of acres is not material to the validity of the assessment, but if any error was made therein it was the owner's duty to correct it. *Answer :* I affirm this proposition, gentlemen of the jury. You will observe that the proposition supposes that the owner recognized that the Turner tract and the other land which Martin Crippen purchased were assessed separately ; that is, that the Turner tract was assessed as one tract by itself, and that the other land was assessed by itself. Of course, if the owner understood that, recognized that, acquiesced in it, that was the end of the defendant's right. That is the very bone of contention in this case, the plaintiff assumes one of the vital questions in this case. But if you should find that the owner knew that his land was separated into two distinct tracts, the Turner tract on the unseated list and the rest of his land on the seated list, then it is entirely immaterial whether that other land that he owned, not included in the Turner tract was more than the amount of acres which it actually contained or not. [17]

15. If in 1882 the owners of the Turner tract paid the taxes assessed thereon for the years 1879, 1880 and 1881, as a separate and distinct tract of thirty-six acres on the unseated list, which were assessed upon a valuation varying from $10.00 to $15.00 an acre, and at or about the same time he paid the taxes assessed upon a separate tract of four hundred and eight acres assessed in the seated list at a valuation varying from $2.40 to $3.00 per acre, he should have known that the tracts were separately assessed and that the taxes for 1882 had been assessed in the same manner, but failing to make any correction in the usual assessment, and failing to pay the taxes for 1882, as assessed upon the Turner tract, he cannot now claim that simply because he had in fact less than four hundred and eight acres on the seated list his payment of taxes for the year 1882 upon the four hundred and eight acres included also the taxes on the Turner tract. *Answer :* I decline to affirm this point as it is written. The point assumes payment on separate and distinct tracts ; in other words, it assumes that the owner of the land, or the Crippen representatives, paid taxes upon the Turner tract assessed as unseated land separate and distinct by itself, and paid taxes upon the other land as an assessment separate and distinct from the Turner tract as seated land. Of course, if the owner did

that, it would be a recognition of a separate and distinct assessment, it would be a recognition of what is claimed here by the plaintiff, that the four hundred and eight acres did not include the Turner tract, because if they were assessed separately one did not include the other. If, however, the thirty-six acres were included in the land assessed as four hundred and eight acres as seated land, and the taxes on the seated land were paid, the additional payment of taxes levied upon the same land, also assessed as unseated land, would not stop the owner from showing that the taxes had already been paid. In other words, if the owner chose he might .pay taxes on both assessments, but he was not obliged under the law, if the land assessed as seated included the other, to pay taxes upon it as seated land and then pay taxes again on it as unseated land. [18]

Defendants' point and answer thereto among others were as follows :

2. If the jury believe that Martin Crippen, who it appears purchased certain lands from Paul Aten in 1873, had them surveyed out and embraced in one tract, and returned them to the assessor on the seated list, as unimproved lands, and that the total acreage thereof, to wit : four hundred and nine acres, more or less, embraced the Daniel Turner tract, as well as all of the Joseph Hunter, except the two pieces formerly sold to Race and Coolbaugh, and that the said tract was assessed as one tract in the name of Martin Crippen, owner, in the seated list, as unimproved lands for the year 1882, and that the taxes for that year were paid on the same, the verdict must be for the defendants. *Answer :* I decline to affirm this proposition as it is written, for the reason that there is no evidence that Martin Crippen had these lands surveyed. There is evidence, however, that the land he purchased included the Turner tract as well as part of the Hunter tract, that is, that the land that Martin Crippen purchased from Paul Aten included the Turner tract and all of the Hunter tract, except what Paul Aten had sold to Race and Coolbaugh. If the assessor assessed these two tracts together as one whole tract, as Crippen had the right to have it done if he so chose, if the assessor assessed the two tracts together, that is, the Turner tract and what was left of the Hunter tract together as one assessment, as seated land, and the taxes levied thereon were paid, then the verdict should be for the defendants. [19]

For a proper understanding of the case, the following portions of the dissenting opinion by ARCHBALD, P. J., on the rule for a new trial are given:

The facts on which this case turns are practically undisputed. In 1882—the year for the unpaid taxes of which the sale on which the plaintiff relies took place—the estate of Martin Crippen, deceased, was assessed with four hundred and eight acres in Ransom township at the value of $3.00 per acre, making a total valuation of $1,224. On this assessment the taxes for that year were duly levied and paid, and in the face of such payment the owners of the land could not in my judgment be called upon to pay a second time for taxes upon any part of it. They paid upon all the land which they had and all the land which there was there, and more than that could not be made out of it. If there was any dispute as to the quantity of land this might be different, but there is none. On this both parties practically agree. It is true that Mr. Wolfe, the plaintiff's surveyor, at one place in his testimony says there were four hundred and forty-eight acres, but further inquiry from him established that this was not the result of an actual survey made by him, but was a mere matter of calculation. He plotted the lines, and notwithstanding that the final course called for in the description of the Joseph Hunter tract is carried to the place of beginning he left this course unconnected and unclosed, thus adding to that tract a strip of several rods in width the whole length of it, and making the extra quantity which he gave. But there is no such excess in fact; it existed only in his suppositions and incorrect map, and later on in his testimony he concedes that correcting this there is but the four hundred and eight acres contended for by the defendants, except that by locating the southerly line of the Joseph Hunter a few rods further south there might be five or ten acres more in the tract. This is not thirty-six acres such as is called for by the assessment on which the plaintiff relies, and even as to this alleged five or ten extra acres the testimony of Mr. Wolfe is altogether too indefinite to raise any substantial issue as to the true acreage of the tract.

The question is thus squarely presented, whether the owner of land who pays taxes on all the land he has can be subjected or have his property made liable to a second assessment upon any part of it. This proposition seems to answer itself. But if

authority be wanted to further substantiate it the following cases may be referred to: Montgomery v. Meredith, 17 Pa. 42; Everhart v. Dolph, 133 Pa. 628.

It is said that the acreage is merely a matter of description and this in many cases is undoubtedly true. It might be more successfully contended for in the present instance if the assessment were for a round sum for the whole tract, but that is not the case. It is assessed at so much per acre, and the total assessment is derived by multiplying the number of acres by the value per acre given to them. The acreage thus enters directly into and governs the quantum of the assessment and the taxes levied and paid upon it. The owners for the year in question paid taxes upon four hundred and eight acres of land, neither more nor less; not on a tract indefinitely described as having that number of acres.

It is urged, however, that the question whether there was a double assessment was submitted to the jury and that their verdict disposes of it. This overlooks the whole point in the argument. There cannot but be a double assessment if the same land is assessed twice, and it is assessed twice if the whole number of acres are assessed in any single assessment as they were here in the assessment to the Crippen estate of four hundred and eight acres, and then a part of it assessed again under the guise of another assessment.

This the court should have declared as a matter of law, instructing the jury that if there were but four hundred and eight acres there, and that was covered by one assessment there could be no other.

It is still further urged that there was a recognition of the propriety of the two assessments by the payment of taxes upon both by the owners of the Crippen tract for a number of years prior to the treasurer's sale, but this could not make the second assessment valid even if there was. There is no question of estoppel to be deduced from these acts. The owners saw fit to pay as they did, but they did not have to, and the plaintiff takes nothing by what they did.

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* among others were (2, 5) rulings on evidence, quoting the bill of exceptions; (14–19) above instructions, quoting them.

*Everett Warren*, with him *Henry A. Knapp*, for appellants.— The land was doubly assessed and taxes paid on one assessment prior to the sale: Kramer v. Goodlander, 98 Pa. 353.

Where two or more tracts adjoin each other and are used and occupied as one they may be assessed as a single tract: 25 Am. & Eng. Ency. of Law, 223.

Where contiguous tracts are conveyed and held by one deed as one tract they are to be taken as one tract, though lying in different counties and separated by a river: Hairston v. Stinson, 13 Ired. 479; Heft v. Gephart, 65 Pa. 510; 25 Am. & Eng. Ency. of Law, 224.

The treasurer's deed was so indescriptive as to be inoperative: Blackwell on Tax Titles, sec. 226; Dike v. Lewis, 4 Denio, 238; Tallman v. White, 2 N. Y. 72; Johnson v. Elwood, 53 N. Y. 434; Thompson v. Burhans, 61 N. Y. 66; Bank of Utica v. Mersereau, 3 Barbour's Chancery, 528; Keane v. Cannovan, 21 Cal. 291; Garwood v. Hastings, 38 Cal. 224; People v. Mahoney, 55 Cal. 288; Wofford v. McKinna, 23 Texas, 36; Bean v. Thompson, 19 N. H. 290; Altes v. Hinckler, 36 Ill. 265; Brown v. Wright, 17 Vt. 97; McCready v. Sexton, 29 Iowa, 382; Alexander v. Hickox, 34 Mo. 496.

It was error to admit evidence of payments by Martin Crippen, of the taxes on the Daniel Turner warrant as unseated, for the previous years: Albert v. Miller, 7 W. N. C. 478; Huntingdon and Broad Top Mountain R. R. & Coal Co. v. Decker, 82 Pa. 119; Erie & Wyoming Valley R. R. Co. v. Smith, 125 Pa. 259.

*William H. Jessup*, with him *W. W. Watson*, *I. H. Burns* and *H. M. Streeter*, for appellee.—What are the requisites of a valid sale of unseated land for taxes? (1) That the land was unseated at the time of assessment; (2) that a tax appears to have been and was in fact assessed upon it by the proper taxing officer; (3) that the tax has been due for one whole year and remains unpaid.

The absence of either of the above facts renders the sale void: Laird v. Heister, 24 Pa. 452; McReynolds v. Longenberger, 57 Pa. 27.

The land was admittedly unseated, and proper to be assessed in the unseated list: Fisk v. Corey, 141 Pa. 334; Heft v. Gephart, 65 Pa. 510.

No particular words are required to describe seated or unseated land: Hathaway v. Elsbree, 54 Pa. 498; Preswick v. McGrew, 107 Pa. 43; Bayard v. Inglis, 5 W. & S. 468.

The error in this deed renders it more indescriptive than would an error in the name of the party to whom the land was assessed, but this would be a mere irregularity, and would be cured by the act of 1815: Close v. Coal Co., 41 Leg. Int. 34; Strauch v. Shoemaker, 1 W. & S. 166; Harper v. McKeehan, 3 W. & S. 238; Russell v. Werntz, 24 Pa. 337; Thompson v. Chase, 2 Gr. 371; Dietrick v. Mason, 57 Pa. 40; Hoffman v. Bell, 61 Pa. 444; Stewart v. Shoenfelt, 13 S. & R. 360; Miller v. Travers, 8 Bing. 244; Atkinson's Lessee v. Cummins, 9 How. 479; Fetrow v. Kochenour, 3 Brewster, 138; Smith v. Horn, 168 Pa. 372; Lulay v. Barnes, 172 Pa. 331; Penna. R. Co. v. Pearsol, 173 Pa. 496.

Recitals in a tax deed where the form is not prescribed by statute may be treated as surplusage, and does not affect the validity of the deed: Harper v. Rowe, 55 Cal. 132; Hickman v. Kempner, 35 Ark. 505; 25 Am. & Eng. Ency. of Law, 685; McCoy v. Michew, 7 W. & S. 386; Miller v. Hale, 26 Pa. 432; Woodside v. Wilson, 32 Pa. 52; Coxe v. Derringer, 82 Pa. 256.

OPINION BY MR. JUSTICE McCOLLUM, October 11, 1897:

The land in suit was included in the deed from Paul Aten to Martin Crippen, dated September 26, 1873, and it was all of the Turner tract that the former could convey to the latter. In 1882, and in at least seven of the eight years previous thereto and directly following Aten's conveyance to Crippen, the land was separately assessed by the proper officer in the unseated list. In the first three years of the period thus defined the assessed valuation of it was $108, or $3.00 per acre; in the fifth and sixth years, $360, or $10.00 per acre; and in the seventh, eighth and ninth years, $540, or $15.00 per acre. In 1876 the land was sold by the county treasurer for taxes levied on one or more of these assessments, and A. D. Dean, as attorney for Martin Crippen, and on his request, became the purchaser of it. On August 8, 1881, Dean conveyed the same to Crippen's administrator who, on July 18, 1882, paid the taxes upon it for the years 1879, 1880 and 1881. While the land in question was separately assessed and valued as above stated, the land as-

sessed to Martin Crippen was returned in the seated list as unimproved, and was valued in 1874, 1875 and 1876 at $5.00 per acre, in 1877 and 1878, at $2.40 per acre, and in 1879, 1880, 1881 and 1882, at $3.00 per acre. It is a reasonable inference from the above recited facts that the Turner tract was separately assessed in the unseated list from 1874 to 1882, inclusive, and that the taxes levied on the separate assessments of it made prior to 1882 were paid by Martin Crippen or his estate. It may also be reasonably inferred from them that the separate assessments of it in the lifetime of Martin Crippen were made with his knowledge and consent, and that like assessments of it subsequent thereto were recognized and approved by his administrator.

In 1884, that part of the Turner tract included in Aten's deed to Crippen was sold by the county treasurer, for taxes levied on the separate assessment of it in 1882, and purchased by James M. Everhart, the plaintiff in this suit. His claim of title to it is contested by the defendants on three grounds: (1) The assessments to Crippen from 1874 to 1882 included it and, as Crippen or his estate, prior to the sale under which the plaintiff claims, paid all the taxes levied on these assessments, the sale was unwarranted and void; (2) if there was a valid assessment and sale of the Turner tract the treasurer's deed of it "was so indescriptive as to be inoperative," and (3) the defendants were purchasers without notice or knowledge of any separate assessment of it.

The main support of the first ground of defense lies in the fact that the acreage mentioned in the assessments to Crippen corresponds substantially with the acreage mentioned in Aten's deed to him. This was undoubtedly a circumstance to be taken into consideration by the jury in determining whether the Turner tract was included in the Crippen assessments, but it was not, in and by itself, conclusive that their claim of inclusion was well founded, nor fatal to the plaintiff's contention. "If the quantity in the assessments was too great it does not follow that the disputed land was included nor, if not enough, that it was excluded. The quantity returned and assessed would be a fact to consider in ascertaining if the land in dispute was a part of the tract assessed:" Kramer v. Goodlander, 98 Pa. 370. The separate assessments and valuations of the Turner tract and

1897.]

the payments by the Crippens without protest or complaint of the taxes levied thereon were inconsistent with the inclusion of it in the assessment of the tract valued at $3.00 per acre. These were matters proper for the consideration of the jury in determining whether the Turner tract was included in the Crippen assessments. Whether it was so included was a question for them to decide on the relevant and competent evidence in the case. This was the view taken of it by the court below, and this appears to have been in accord with the view of it entertained on the trial by the learned counsel for the defendants.

The defendants have not brought to our notice any decision of any court in Pennsylvania to support the second ground of their defense. They have cited adjudications of the courts of other states which seem to give color to it, but these were undoubtedly made in accordance with the legislation regulating and governing tax sales within their respective jurisdictions. The numerous decisions of the courts of Pennsylvania relating to sales of unseated lands for taxes are certainly not in clear accord with the adjudications referred to, and while they may not cover the exact point in question their trend is obviously adverse to this branch of the defendants' contention. In Miller v. Hale, 26 Pa. 432, as in this case, the treasurer's deed to the plaintiff was attacked as defective. This court in its opinion said: " The question, then, upon this deed was whether it described the land assessed, and that was properly submitted to the jury as a question of fact. That land by whatever name it was sold, was the debtor for the taxes imposed, and if it was sold and conveyed to the plaintiff in satisfaction of the assessment, he acquired a good title. The name of the warrantee and of the township are circumstances of designation but not conclusive. The identity of the tract assessed must be fixed to the satisfaction of the jury—if by the warrantee and the township, very well—if by other circumstances of designation, equally well: 1 W. & S. 166 ; 4 Harris, 404. The evidence here tended to identify the tract conveyed with that assessed and sold ; and having proved satisfactory to the jury, it must be so to us." In our case the defendants frankly admitted in their printed argument that the defect in the deed was the result of the treasurer's mistake in describing the land, and that it was within the power of the court to correct it, or to consider that as done

which ought to have been done, but in connection with this admission they characterized the plaintiff's claim as without merit, and maintained that the treasurer's error was therefore fatal to it. We cannot assent to this view of the treasurer's mistake, because, aside from the admission above stated, the evidence in the case clearly and undisputedly identified the land described in the deed as the land assessed and sold and now in question.

The specifications of error which relate to rulings upon offers of evidence are not sustained. The evidence admitted under these rulings was relevant to the questions already discussed, and proper for the consideration of the jury. As to the claim of the defendants that they were purchasers without notice of a separate assessment and sale of the land in question, it is sufficient to say that the treasurer's sale of it to Dean, as hereinbefore stated, was recited in Willard's deed to them, in his deed from the sheriff and in the sheriff's deed to Smith, and that, at the time of the sheriff's sale to Willard, public notice of Everhart's title was duly given.

The specifications of error are overruled.

Judgment affirmed.