## DE ROUX v. GIRARD et al.

### (Circuit Court, E. D. Pennsylvania. January 16, 1901.)

### No. 55.

1. MORTGAGES—FRAUD—CONFIDENTIAL RELATIONS.

Several of the owners of certain timber and coal lands in common, one of whom was an attorney, agreed to a division of the timber land and a scheme for the management of the coal lands; but the other owners in common commenced suit against them to set the agreement aside, and a settlement was made, and the timber land was conveyed to two of the objecting owners, who gave a mortgage on the timber lands and on their interest in the coal lands to the other owners to secure the entire purchase money. The attorney at the time of the execution of the mortgage represented all the tenants in a certain litigation over the coal lands, but was not shown to be the attorney of the mortgagors in other respects. The mortgage was personally acknowledged by one of the mortgagors, and the certificate recited that she was informed of the contents thereof. The objection that the coal lands were included in the mortgage was not raised in a contested foreclosure suit. Held not sufficient evidence of the confidential relation of attorney, and the fraudulent insertion of the coal lands in the mortgage, to authorize a recovery of the property by the mortgagor after the foreclosure sale thereof.

2. HUSBAND AND WIFE—DISQUALIFICATION OF WIFE—EXECUTION OF MORTGAGE.

A married woman was not incompetent to execute a valid mortgage on her lands in 1857.

3. FOREIGN WILL—FAILURE TO PROBATE—RECOVERY OF REAL ESTATE.

Where a foreign will devising real estate is not probated under the laws of the state where the property is situated, an action based thereon cannot be maintained by the devisee to recover such property.

4. TAX SALE—VALIDITY.

Where real estate in which an interest is claimed by plaintiff under a foreign will is sold for taxes, and conveyed after the expiration of the period of redemption to defendant, who owns the remaining interest therein, and no fraud is shown, the plaintiff cannot recover her alleged interest therein, since it was devested by the tax sale.

See 90 Fed. 537, 92 Fed. 948.

Carrie B. Kilgore, for complainant.

R. L. Ashhurst, John M. Gest, Thos. Hart, Jr., J. Percy Keating, John G. Johnson, and Wm. M. Stewart, Jr., for respondents.

J. B. McPHERSON, District Judge. Stephen Girard, who died in 1831, disposed of nearly all his estate by will, but failed to devise certain tracts of land in the counties of Schuylkill and Columbia, and these tracts descended to his heirs. Among these was a niece, Marie De Roux, a resident of France, whose children are the complainants in this proceeding. The city of Philadelphia took possession of the land, claiming to be the owner under the will of Girard, and the heirs were therefore obliged to bring an action of ejectment to establish their title. This action was brought in the year 1850 in the circuit court of the United States for the Eastern district of Pennsylvania, and among the counsel for the plaintiffs was Theodore Cuyler, whose heirs are the principal parties defendant in the pending bill. The action was successful, and in May, 1853, a writ of habere facias possessionem was issued, under which the heirs of Girard were put into possession of the land in controversy. There

were 12 tracts in all; 9 being tracts of timber land, called also "farm lands," and 3 being underlaid with coal, not then developed.

In June, 1854, the heirs conveyed to Mr. Cuyler and Mr. Read, one of his associates,—who afterwards sold his interest to Mr. Cuyler, and need not be further mentioned,—"one full, equal, undivided interest, equal in amount, number of acres, extent, quantity, and value to fifteen per cent. of the entire amount, number of acres, extent, quantity, and value of, in, and to each and all of those twelve tracts * * *"; the deed reciting that the grantees had agreed to "undertake and conduct proceedings in the law for the recovery of the said tracts, pieces, and parcels of lands, estates, and premises, and, as compensation for their services rendered in such legal proceedings, [to] receive an interest in all such lands equal to fifteen per cent. of their full amount and value," and reciting further that "such legal proceedings have been successfully conducted, and by final process, issuing out of the circuit court of the United States in and for the Eastern district of Pennsylvania, actual possession of said lands has been delivered unto the" heirs. For the time being, this ended the professional relation between Mr. Cuyler and the heirs. He ceased to be their counsel, becoming instead a tenant in common, owning an undivided 15 per cent.

In December, 1854, the city of Philadelphia brought a second action of ejectment in the common pleas of Schuylkill county, claiming to recover the coal lands only, and Mr. Cuyler appears of record as counsel for the heirs defendant. No evidence was offered concerning the progress of the case in the common pleas, but from the record in the supreme court it appears that the city was defeated at the trial, and sued out a writ of error in March; 1863. Meanwhile, in December, 1857, a transaction took place which lies at the foundation of the complainants' case, and should therefore receive careful attention. On December 26th a mortgage was made by two of the heirs; Marie De Roux being one, and Mr. Cuyler being one of the mortgagees. The bill charges that when this mortgage was executed Mr. Cuyler was acting as the attorney of Marie De Roux, that he fraudulently concealed from her the true nature of the instrument, and that "the said Marie Celeste De Roux, trusting the said Cuyler as her proper attorney in the matter of the said mortgage, and in all matters, took no means to protect herself against any duplicity in connection therewith." If these averments are not proved, the complainants have no case; and it is essential, therefore, to understand, as nearly as may now be possible in the light of the evidence presented, what was the relation of the parties in December, 1857. For this purpose it is necessary to go back to the year 1854.

In May of that year the heirs had been put into possession of the lands, and the next matter to be determined was, what should be done with them. This question was solved by two agreements, one dated in May and the other in June. The first agreement provided that the coal lands should be held together and undivided, and snould be managed by five persons as commissioners or agents for all the owners, Mr. Cuyler being chosen as one of the commissioners; and the second agreement undertook to make an amicable par-

tition of the timber lands. These agreements were not satisfactory to some of the heirs (Marie De Roux being one), who were living abroad, and were represented in this country by attorneys in fact with limited powers. Accordingly, in December, 1856, a bill was filed by the dissatisfied heirs in the supreme court of Pennsylvania to set aside the two agreements, and this was done by a decree entered in the following July. The decree also directed an account to be taken of the rents, issues, and profits that had been received by the commissioners, and by those of the parties defendant that had gone into possession of the timber lands under the deed of partition. No account was taken, however, for a reason that appears upon the face of the papers that were executed a few months afterwards. During this interval, from July to December, the existing disputes were amicably adjusted, the commissioners and those of the heirs that had gone into possession of the timber land were released from liability to account, and Marie De Roux and Stephanie De Lentilhac, two of the heirs, agreed to buy the interest of all the other tenants in common of the timber lands for $23,111.13. I say that all this was agreed upon, because it was actually done on December 26th. Up to this point there is not a spark of evidence that Mr. Cuyler was Madame De Roux's attorney in the settlement of these difficulties among the heirs. On the contrary, the proceedings to set aside the agreements were adverse, so far as he was concerned. He was himself a defendant, and counsel of record for all the other defendants except one, and Madame De Roux was represented by M. R. Thayer as her attorney. Neither is there the slightest evidence that Mr. Cuyler was her attorney in the matter of the purchase and sale of the timber lands. There is nothing whatever to overcome the prima facies of the transaction, which presents him simply as the owner of an undivided interest, agreeing to sell to two of the other owners for a price mutually agreed upon, and bearing no confidential relation to the purchasers. At that time he was attorney for Madame De Roux and the other heirs in a separate and distinct piece of business, namely, the defense of their title to the coal lands against the attack of the city of Philadelphia, but this business had no relation to the settlement of the dispute among the heirs themselves. He was therefore acting merely as an owner of property engaged in the sale of it upon his own account, and was under no obligation, moral or legal, to look after the advantage or interest of the purchasers. He had a right to sell to the two heirs that were disposed to buy, and, so far as the evidence discloses, he was under no professional engagement to take charge of their interest in the transaction.

As far as appears upon the face of the papers, no money was paid by the grantees, but a mortgage for the whole of the purchase money named in the deed was given by Madame De Roux and Madame De Lentilhac, joined by their husbands; and the mortgage was so drawn as to cover not only the timber lands, but also the interest of the mortgagors in the coal lands. This is the precise point of the complainants' attack,—the inclusion of the coal lands in the mortgage. The circumstance is said to be so unusual as to arouse and

justify suspicion of unfair dealing on the part of the mortgagees,—especially on the part of Mr. Cuyler,—and to be of itself sufficient to cast discredit upon the transaction. I am wholly unable to take this view of the matter. No doubt, a purchase-money mortgage ordinarily includes no other property than the land just bought by the mortgagor; but this is because part of the purchase money is usually paid in cash, and the land is considered sufficient security for the rest. It is evident that neither reason existed here. No money was paid, and the lands were apparently an insufficient security, because they were mainly timber lands, and their value consisted largely in the growing trees. It appears from an affidavit made six years later by the husband of Madame De Lentilhac that, out of more than 4,000 acres embraced in the nine tracts of so-called farm lands, only 546 acres were improved and cultivated in 1863, so that in 1857 more than seven-eighths of the surface of these tracts was covered with timber. Manifestly, to take a mortgage for the whole consideration merely upon the timber land conveyed, leaving the purchaser at liberty to strip the land of its valuable covering,—to say nothing of danger from forest fires,—would have been a most imprudent step; and it is not at all surprising, therefore, that the security taken by the mortgagees should have included other property than the lands conveyed. Moreover, even if this sufficient explanation did not exist, not only is there no evidence that the coal lands were fraudulently inserted in the mortgage, but Madame De Roux, who was then in this country, executed the instrument in person, and not by attorney, and acknowledged before an alderman of the city of Philadelphia that the contents of the mortgage were fully make known to her before signing. In the face of this acknowledgment, which is not contradicted by a syllable of testimony, it is impossible to draw the conclusion that the complainants urge the court to draw. In Pennsylvania the certificate by a magistrate of the acknowledgment of a deed is a judicial act, and, in the absence of fraud or duress, is conclusive. Heeter v. Glasgow, 79 Pa. St. 79; Carr v. Coke Co., 170 Pa. St. 70, 32 Atl. 656. Fraud is never to be presumed, but must always be proved by the party alleging it, and this burden the complainants have certainly not been able to bear. Even if the inclusion of the coal lands tended to support the complainants' averment of fraud, it would unquestionably be insufficient of itself; for the bill calls for an answer under oath, the answer responsively denies the allegations of fraud, and the requisite quantity of proof to overcome the denial is not forthcoming. Vigel v. Hopp, 104 U. S. 441, 26 L. Ed. 765; Development Co. v. Silva, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678.

If, as seems perfectly clear to my mind, Mr. Cuyler was not the attorney of Madame De Roux in the purchase of the timber lands, and did not fraudulently conceal from her the fact that the coal lands were included in the mortgage, the complainants' case breaks down wholly at this point. The mortgage was valid, and there was nothing to forbid the mortgagees from proceeding upon it at law after it became due, and enforcing collection by appropriate process. This was done in the year 1863, and Mr. Cuyler bought the coal

property finally in June of 1864 for himself and several other persons; the deed being recorded in November of the same year. It may be noted, in passing, that during the proceedings upon the mortgage, which lasted nearly 18 months, and were contested upon various grounds, there was no suggestion that the mortgage included lands that were not intended to be embraced thereby. It is true that Madame De Roux had gone back to France two or three years before the suit was brought, and that she was not personally served; but Madame De Lentilhac was served personally, and her interests were identical with those of Madame De Roux. But, although she made a vigorous effort to prevent a sale, attacking the proceedings on several grounds, it was never suggested that the inclusion of the coal lands was due to fraud.

It is argued, however, that as Madame De Roux was a married woman in December, 1857, the law of Pennsylvania disabled her from making the mortgage in question. To this argument it is enough to reply that the decided cases do not support the position. Jamison v. Jamison, 3 Whart. 471; Black v. Galway, 24 Pa. St. 18; Haffey v. Carey, 73 Pa. St. 431; Kuhn v. Ogilvie, 178 Pa. St. 303, 35 Atl. 957; Siebert v. Bank, 186 Pa. St. 233, 40 Atl. 472.

Other defenses are set up to the bill, such as the statute of limitations; the fact that Madame De Roux in 1859 covenanted to convey her interest in the coal lands to two persons, not parties to the bill; and the further fact that in 1863 this interest was levied upon under a judgment recovered against her husband and herself, and was sold to one John B. Solms, the sheriff's deed bearing date the 13th of March. In the recovery of this judgment, Mr. Cuyler was attorney for the plaintiff, thus showing plainly that he did not represent Madame De Roux generally, but only by particular employment. I shall not extend this opinion by considering these defenses, but there is a final defense about which a few words must be said. In 1861, after the mortgage had been executed, Madame Vidal, who was also one of the heirs, died in France, and, by an instrument in writing purporting to be her last will, devised a certain interest in these coal lands to Madame De Roux. It is evident that this interest could not have been included in the mortgage, which was executed several years before the death of Madame Vidal, and complainants therefore set up a right to recover on behalf of this interest, even if their attack upon the validity of the mortgage should fail. There are, however, two answers to this claim: In the first place, the paper produced, which is said to be a copy of Madame Vidal's will, has never been probated as a foreign will in accordance with the law of the state of Pennsylvania, and cannot, therefore, avail the complainants in the present proceeding. In the second place, even if the will had been probated in Pennsylvania, I think it is clear that whatever title may have passed in 1861 to Madame De Roux under this devise was levied upon and sold in 1868 for nonpayment of taxes. In June of that year the treasurer of Schuylkill county sold these tracts of coal land to William F. Donaldson, and in March, 1871, after the time for redemption had gone by, Donaldson conveyed the land to Mr. Cuyler and certain other persons.

There is no evidence of any kind to impeach the regularity, fairness, or validity of this sale, or to show that any person concerned therein or profiting thereby was in any respect acting fraudulently or in bad faith. The lands being unseated, the effect of this sale was to devest the title of the real owner. "The land, by whatever name assessed and sold, was debtor for the taxes imposed, and a sale in satisfaction of the assessment conveys a good title to the purchaser." Miller v. Hale, 26 Pa. St. 432. See, also, Lightner v. Mooney, 10 Watts, 407; Russel v. Werntz, 24 Pa. St. 338; Woodside v. Wilson, 32 Pa. St. 52; Everhart v. Nesbitt, 182 Pa. St. 513, 38 Atl. 525.

Further discussion seems to be unnecessary. The bill must be dismissed at the costs of the complainants.