## Alessi v. Davis et al.

*Guy G. DeFuria,* for plaintiff.

*James N. Robertson,* for Rose Segars, defendant.

BRETHERICK, J., July 7, 1950.—Plaintiff, Leonore T. Alessi, filed her complaint in this action to quiet title. Rose Segars, one of the defendants, filed an answer containing new matter. Plaintiff filed a reply, and a motion for judgment on the pleadings. No appearance has been entered or answer filed by any of the remaining defendants.

The premises involved in these proceedings are known as 327 and 329 Marks Avenue, in the Borough of Darby, this county.

The complaint avers that the former owner of the premises was Sarah E. Davis. She acquired title under the will of her daughter, Henrietta E. Davis, who died on or about May 26, 1921, the will dated May 21, 1921, being duly proven and recorded in this county. Sarah E. Davis died on or about May 24, 1933, intestate.

Plaintiff avers that the parties in interest are Fred Coleman, Fred D. Davis, Burgess A. Coleman, Henrietta Kennard, Sarah Mackrey, Elizabeth J. Lear, Rose Segars and Ruth Davis, all of whom acquired such interest by descent ultimately from Sarah E. Davis.

The complaint further avers that on December 8, 1941, the Treasurer of Delaware County sold the premises at tax sale to the county commissioners, the deeds therefor being duly recorded; that by deeds dated November 23, 1949, and duly recorded, the premises were conveyed after public sale on November 10, 1949, by the County of Delaware to plaintiff, as the property formerly of and assessed to Sarah E. Davis, deceased; that "upon diligent inquiry, no persons have been found who have or claim to have any right, title or interest in or claim against, said land, other than the defendants mentioned in paragraph no. 6 hereof".

Defendant's (Rose Segars') answer admits in general the allegations of the complaint. However, paragraph 5 of the answer avers that Mae Johnson, mother of Rose Segars, died on December 28, 1940, and that

"the said Rose Segars at the date of Mae Johnson's death was not of legal age, being then 17 years old". Paragraph 6 of the answer avers "that the interest of Rose Segars is 1/6, being 1/3 of the 1/2 interest of Mae Johnson". Paragraph 7 of the answer avers that the first actual notice to Rose Segars of the tax sale "was on service of the copy of the complaint in this action, although she has been a tenant in common with a 1/6 interest since December 28, 1940, which was well within the time of redemption following the first sale".

In her new matter, Rose Segars avers that she held a one-sixth interest in the real estate in question; that no notice of any kind was ever received by her of any tax sale, although she was actually a tenant in common "thereof"; that by the Act of May 24, 1917, P. L. 270, she, being a tenant in common, had a right to pay the proportionate amount of the taxes on the premises; that she "has been and is ready, willing and able to pay her share in the said taxes".

Plaintiff's reply admits that Rose Segars held a one-sixth interest in the real estate in question and that, under the Act of 1917, P. L. 270, she had a right to pay a proportionate amount of the taxes on the real estate. As to the remainder of the allegations in defendant's new matter, plaintiff pleads lack of knowledge and demands proof.

In her brief of argument contra plaintiff's motion for judgment on the pleadings defendant presents but two questions, the first of which she states as follows: "Can a tax sale be valid as against a minor where no guardian has been appointed?" The answer must be in the affirmative. In 61 C. J., Taxation, sec. 1537, p. 1134, it is said:

"In the absence of a statute to the contrary, the fact that land belongs to a person who is under legal disabilities, as an infant or feme covert, does not prevent its valid sale for the nonpayment of taxes assessed

against it, although favor is usually shown to such persons in regard to the time and terms of redemption."

After a thorough review of the statutes in this Commonwealth we have found no legislative pronouncement which extends to infants any favor with respect either to sale for nonpayment of taxes, or to time and terms of redemption.

In Duff v. Tiers, 15 Pitts. L. J. 248, it was held that a sheriff's sale of land under the Pittsburgh Tax Act of March 22, 1877, P. L. 16, vests a good title in the purchaser though the owner is a minor and the scire facias issued on the claim is served only on him. The court said (p. 249):

"The act cited does not except the property of minors from its provisions, nor does it direct that their guardians shall be made parties in any proceedings for a sale of the land for the taxes."

Defendant states in her brief that a judgment taken against a minor, without a guardian having been appointed, "is for all intents and purposes a nullity", citing the Rules of Civil Procedure. Aside from the fact that defendant wholly misreads R. C. P. 2034 (d) there is no analogy whatsoever between a personal action against a minor and a sale of a minor's real estate for nonpayment of taxes. The latter is a proceeding in rem: Bailey et al. v. Zielinski, 39 Luz. 265, 269. And as to the legal effect of a judgment against a minor, not represented by a guardian ad litem, see Hamilton v. Moore, 335 Pa. 433.

The remaining question argued in defendant's brief is: "Was the property properly described as being the property of 'Sarah E. Davis'?" Here, again, the answer must be in the affirmative.

In DeSimone v. McCray, 44 D. & C. 600, 602, the court said:

"The Act of April 3, 1804, P. L. 517, 4 Sm. L. 201, sec. 5, 72 PS §6044, provides that in case of unseated

lands a tax sale will vest in the purchaser or purchasers all of the estate and interest of the real owner although the land may not have been taxed or sold in the name of the real owner thereof. The theory of such law is set forth in the court decisions to be that where a tax is due it must be paid, and where an owner is anxious and willing to pay his taxes he can, by referring to the assessment books, ascertain in whose name the assessment was made, pay the taxes, and have the assessment properly made, if erroneous in any respect. The Act of June 1, 1915, P. L. 660, extends the provisions of the Act of 1804, above recited, to apply equally to seated lands: Ryan v. Bruhin, 88 Pa. Superior Ct. 61. The irregularities in tax assessment, or in process or otherwise, shall not affect the title of a purchaser at a tax sale: Carns v. Matthews, 114 Pa. Superior Ct. 528. It is contended by plaintiff that the Act of May 9, 1929, P. L. 1684, repeals the Act of 1915 in the repealing clause reading as follows: 'All other acts and parts of acts inconsistent herewith are hereby repealed.' This act, followed by the Act of May 29, 1931, P. L. 280, outlines the procedure for the return of unpaid taxes and sale thereon. We do not find that the Act of 1915 is so inconsistent as to be considered repealed by this general clause. In fact, the Acts of 1929 and 1931 both provide that the unpaid tax shall be returned and the property advertised for sale in the name of the owner or reputed owner, thus indicating an intention to continue prior legislation to the effect that the tax sale is valid whether or not returned, advertised, and sold in the name of the actual owner for the years the taxes were not paid."

In Matter of Sale of Property of Catherine Kearney Estate, 19 Northumb. 22, it was held that a tax sale is not invalid because the tax was based on an assessment in the name of a former owner. The court said (p. 31):

"We conclude that it is the intention of the law, because of the large number of properties affected, to excuse the taxing bodies from detailed accuracy with respect to assessment in the name of the actual owner of real estate, and to require only that the description of the property be sufficiently accurate that it may be positively identified. The responsibility remains on the owner to pay his taxes and upon the purchaser of the property to make whatever investigation is necessary positively to determine whether or not the taxes have been paid. This responsibility may involve the requirement of going to the assessment records themselves and checking the return tax dockets for taxes which might have been returned in the name or names of other persons who may have been connected at some time with the title to the land."

In Orban v. Orasz et al., 13 Somerset 413, 417, it was said:

"A tax sale of land vests all the estate of the real owner in the purchaser, although the land may not have been assessed or sold in the name of the real owner. It is the land itself which is charged with the taxes, and the sale thereof by whatever name passes a good title: Miller v. Hale, 26 Pa. 432; Fager v. Campbell, 5 Watts 287; Franklin Coal Co. v. Bertels, 109 Pa. 550. All that the law requires to support a tax sale is, that the assessment must contain some element of identification leading to a knowledge of the land assessed, such as a name which has become linked to the land by some known claim of title or possession: Glass v. Gilbert, 58 Pa. 266. . . . The General County Assessment Law of May 22, 1933, P. L. 853, 72 P.S., Sec. 5020-407 (c), making it the duty of the assessor to ascertain the owner or owners of each parcel or lot of ground, at the time of such assessment, and to assess the same in the name of the then owner or owners, has not changed the law in this respect: Baird's Appeal,

132 Sup. 573, affirmed by the Supreme Court in 334 Pa. 410; DeSimone v. McCray, 44 D. & C. 600."

While defendant has not argued the point in her brief, both the answer and the new matter set up that she received no notice of the tax sale; and that "the first actual notice of such sales was on service of the copy of the complaint in this action, although she has been a tenant in common with a 1/6th interest since December 28, 1940, which was well within the time of redemption following the first sale". It was not a prerequisite to the validity of the tax sale that defendant should have received actual notice of the sale. Section 7 of the Act of May 29, 1931, P. L. 280, as amended, 72 PS §5971(g), after providing for advertisement of the treasurer's sale, further provides:

"In addition to such advertisement, at least ten days before any such sale, written notice thereof shall be served by the county treasurer, by registered mail, upon the owner of such land, and if the whereabouts of the owner is unknown, such notice shall be served by registered mail upon the terre tenant, if any: Provided, however, That no such sale shall be prejudiced or defeated and no title to property sold at such sale shall be invalidated by proof that such written notice was not served by the treasurer, or that such notice was not received by the owner or terre tenant as herein provided."

Numerous decisions have held that this provision of the act means just what its language so clearly states. See, among others, Miller v. Rodemeyer, 47 D. & C. 117; Bailey et al. v. Zielinski, 39 Luz. 265; Orban v. Orasz et al., 13 Somerset 413.

We are of opinion, for the reasons stated, that defendant's answer and new matter fail to set forth a legal defense to plaintiff's claim, and that plaintiff's motion for judgment on the pleadings must be sustained.

8

*Order*

And now, July 7, 1950, upon consideration of the foregoing case, it is ordered, adjudged and decreed that plaintiff's motion for judgment on the pleadings be, and the same is sustained; and judgment is entered in favor of Leonore T. Alessi and against Rose Segars for all those certain premises known and designated as Nos. 327-329 Marks Avenue, Borough of Darby, Delaware County, Pa., more particularly described as set forth in plaintiff's complaint.